JONATHAN A. STIEGLITZ
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Telephone:  (323) 979-2063
Facsimile:   (323) 488-6748

Attorney for Plaintiff
Healthcare Ally Management of California, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Healthcare Ally Management of California, LLC<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Space Exploration Technologies, and DOES 1-10,<br><br>　　　　　　Defendant. | Case No.: 2:22-cv-05098-AB-JEM<br><br>Complaint For:<br><br>1. NEGLIGENT MISREPRESENTATION; AND<br>2. PROMISSORY ESTOPPEL<br><br>Or in the alternative-<br><br>3. RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B)<br><br>**(Jury Trial Requested)**<br><br>Damages - $331,626.00 |

First Amended Complaint

Plaintiff Healthcare Ally Management of California, LLC (hereinafter referred to as "PLAINTIFF" or "HAMOC") complains and alleges:

## PARTIES

1. On January 17, 2019, Los Angeles Center for Oral & Maxillofacial Surgery and Century City Outpatient Surgery Center, LLC (hereinafter referred to as the "Medical Provider") entered into an agreement with HAMOC. The agreement provided that Medical Provider could assign any past, present, or future unpaid or underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid bill. The agreement also provided that once an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill. On November 19, 2021, Medical Provider assigned Patients'[1] underpaid/unpaid bill including the right to file a lawsuit to HAMOC by sending via email a copy Patients underpaid/unpaid bill to HAMOC. Patients are members and enrollees of Space Exploration Technologies (hereinafter referred to as "DEFENDANT") health insurance policy.

2. Plaintiff, is and at all relevant times was a company, organized and existing under the laws of the State of California. Plaintiff is and at all relevant times was in good standing under the laws of the State of California.

3. Plaintiff is not a collections company. Plaintiff works hand in hand with Medical Provider. Plaintiff helps medical providers like Medical Provider to obtain proper payment for the medical services they provide. Plaintiff's assistance allows for Medical Provider to continue operating and providing medical services to its patients.

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patients is being withheld. This information will be disclosed to defendants upon their request.

- 2 -
FIRST AMENDED COMPLAINT

4.     Medical Provider, is and at all relevant times was a medical company, organized and existing under the laws of the State of California.  Medical Provider is and at all relevant times was in good standing under the laws of the State of California.

5.     Defendant is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that Defendant is licensed to transact business in the State of California.  Defendant is, in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

6.     Based on information provided by Defendant, Plaintiff understands that Blue Shield of California and Collective Health ("Administrators") were Defendant's agents and representatives in connection with stating the manner of payment for medical services and providing other administrative services relating to the Patient's and Defendant's health plan.

7.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

8.     At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible

authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patients.

## **GENERAL ALLEGATIONS**

9. This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

10. Medical Provider is informed and believes based on Administrators' oral and other representations, made on behalf of Defendant, that the Patient was an insured of DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and believes that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

11. It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is

discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

12. Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

13. Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

14. The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

15. The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders such as Defendant's representative Administrators have contracted rates for in-network providers that are so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

16. Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as

usual, reasonable, customary and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

17. The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[2]

18. Based upon these criteria, Medical Provider's charges are usual, customary and reasonable. Medical Provider charged DEFENDANT the same fees that it charges all other payors. Medical Provider's fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

19. DEFENDANT and Administrators use the term UCR in their policies.

20. When DEFENDANT or Administrators on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or Administrators will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[3]

21. Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or

---

[2] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1, 2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[3] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

1  Administrators and it is available for free in a more limited fashion for use by
2  consumers.[4]

3    22. When a medical provider like PLAINTIFF is told that DEFENDANT
4  or Administrators will be paying a claim based on UCR, PLAINTIFF expects that
5  DEFENDANT or Administrators will be utilizing the Fair Health database to
6  calculate the exact dollar amount that will be paid.

7    23. In the alternative and separately, Medical Provider is owed proper
8  reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp.*
9  *v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

10    24. Medical Provider is informed based solely on DEFENDANT's
11 representations that Patient's health plan at issue in this litigation is a health plan
12 governed by the Employee Retirement Income Securities Act of 1974 ("ERISA").
13 Based on DEFENDANTS' representations, Medical Provider asserts that Patient's
14 health plan is an ERISA health plan ("ERISA Plan").

15    25. Prior to services being rendered, Medical Provider obtained an
16 assignment from each Patient granting Medical Provider the right to step into the
17 shoes of each Patient with respect to Patient's rights under Patient's ERISA Plan,
18 including but not limited to the right to seek proper reimbursement for medical
19 services as well as to seek legal redress for DEFENDANT's failure to properly
20 administer the terms of the ERISA Plan.

21    26. For Patient's claim, DEFENDANT has waived or is estopped from
22 asserting an anti-assignment provision were one even to exist. *See Beverly Oaks*
23 *Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983
24 F.3d 435, 437 (9th Cir. 2020).

---

[4] *See* fairhealthconsumer.org, (August 1, 2022), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

27. For the claim at issue in this suit, Medical Provider has spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

28. Medical Provider sent out multiple appeal letters to DEFENDANT and any further appeals would be futile as Medical Provider has received letters stating that DEFENDANT's decision is final.

29. In either case, Medical Provider has a reputation for providing high quality care and, as a result, Medical Provider brings this suit to obtain appropriate compensation for Medical Provider's services.

## SPECIFIC FACTS
## PATIENT JH

30. On December 9, 2019, Patient received surgical procedures and facilities from Medical Provider.

31. On November 20, 2019, for the procedure, Medical Provider's employee, Vanessa S., obtained promises and information from Administrators on behalf of Defendant to be assured that Defendant would pay for the services to be provided to Patient and under what terms that payment would be made.

32. Medical Provider asked: what is the Patient's responsibility versus Defendants' responsibility for paying for medical services?

33. Administrators on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $500.00 and $0 had been paid.

34. Administrators on behalf of Defendant represented to Medical Provider that Patient's Max Out Of Pocket ("MOOP") expense is and was $10,500.00 and that to date for that calendar year Patient had paid $0.

35. Medical Provider asked: do Defendants pay based on UCR for procedure codes 21147, 21196, and 21085?

36. Administrators on behalf of Defendant represented to Medical Provider that for services in connection with the procedure codes 21147, 21196, and 21085, Defendants pays the UCR rate.

37. Medical Provider asked: do Defendants use a Medicare Fee Schedule to pay for procedure codes 21147, 21196, and 21085?

38. Administrators on behalf of Defendant represented to Medical Provider that for services in connection with the procedure codes 21147, 21196, and 21085 payment is not based on Medicare.

39. All of the information was documented by Medical Provider as part of Medical Provider's office policy and practice.

40. At no time prior to the provision of services to Patient by Medical Provider, on November 20, 2019 or otherwise, was Medical Provider advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to a UCR payment. At all times DEFENDANTS made it clear that payment would not be based on Medicare.

41. Administrators on behalf of Defendant did not make reference to any other portion of Patient's plan that would put Medical Provider on notice of any reduction in the originally stated payment percentage let alone payment at the Medicare rate instead of the UCR rate.

42. Medical Provider was never provided with a copy of Patient's plan by the Administrators on behalf of Defendant, Defendant or Patient. As a result, Medical Provider could not even make itself aware of any reduction of the payment amount let alone that the payment amount would not be UCR and would instead be Medicare.

43. By Administrators' representations on behalf of Defendant, Administrators on behalf of Defendant and Defendant intended for Medical Provider to provide services to the Patient.

FIRST AMENDED COMPLAINT

44. Administrators on behalf of Defendant and Defendant intended for Medical Provider to rely on the information provided during the authorization and verification calls.

45. Before providing services, but once Medical Provider was informed that the payment rate was UCR and not Medicare, Medical Provider referred to the Fair Health data, the same data utilized by Administrators and Defendant to determine the amount Medical Provider could expect to be paid by DEFENDANT.

46. Medical Provider relied and provided services solely based on Administrators' on behalf of Defendant representations. Medical Provider took Administrators on behalf of Defendant and Defendant at their word and representations and provided the medical services for the procedures based solely on that information.

47. Following the procedure, Medical Provider submitted its claims to Administrators on behalf of Defendant and Defendant accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of Medical Provider's claims were submitted to Administrators on behalf of Defendant and Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Medical Provider submitted to Administrators on behalf of Defendant and Defendant any and all billing information and any and all additional information requested by Administrators on behalf of Defendant.

48. Administrators on behalf of Defendant processed Medical Provider's bill of $331,626.00 and sent a total payment amount of $6,123.00 far below the total billed amount or the UCR amount.

49. Administrators on behalf of Defendant paid based on the Medicare fee schedule in direct contradiction to the representations it had made to Medical Provider.

50. Administrators on behalf of Defendant and Defendant knew that at the time it told Medical Provider that the payment rate was UCR not be based on Medicare that in fact the payment rate would be based on Medicare.

51. Administrators on behalf of Defendant and Defendant misrepresented the payment rate with the intent of obtaining services for its insured and in so doing intended to and did induce Medical Provider to provide services.

52. Following DEFENDANT's Medicare payment, Medical Provider sent Administrators on behalf of Defendant a number of letters to have Administrators on behalf of Defendant and Defendant pay at the UCR rate which was represented.

53. In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) Administrators on behalf of Defendant and Defendant have failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

54. Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider. The assignment stated among other things: "I hereby convey to the above named provider(s), to the full extent permissible under the law including but not limited to, ERISA §502(a)(1)(B) and §502(a)(3), under any applicable employee group health plan(s), insurance policies or public policies, any benefit claim, liability or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right I may have to such group health plans, health insurance issuers or tortfeasor insurers(s), with respect to any and all medical expenses legally incurred as a result of the medical services I received from the named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies including, but not limited to….pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party…in my name…"

55. Following the medical procedure, Medical Provider submitted a bill or UB-04 and CMS-1500 to Administrators on behalf of Defendant which stated that Medical Provider had received an assignment from the Patient. The UB-04 and CMS-1500 noted the assignment in the very same manner as was noted in *Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020) by ticking the box with a "Y" indicating an assignment.

56. At no point in time did Administrators on behalf of Defendant or Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

57. Over the next couple of months, Medical Provider sent numerous appeal letters to Administrators on behalf of Defendant and as a result Defendant in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

58. Medical Provider was never informed during this process that Patient's plan had an anti-assignment provision and that Administrators on behalf of Defendant or Defendant would only speak with the Patient. At all times Administrators on behalf of Defendant and Defendant spoke directly with Medical Provider including sending EOBs and payment directly to Medical Provider also in accord with *Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020).

59. Patient's Plan health plan is completely unclear about how it pays for medical services. The plan gives three options for how it could potentially pay. "For some healthcare charges, the plan will use Medicare reimbursement rates as a benchmark, and will set the allowed amount as 110% of the Medicare reimbursement rate. For other healthcare charges, the plan will use industry recognized data such as that from FAIR Health (an independent, not-for-profit corporation) as a benchmark, and will set the allowed amount at the 80th percentile.

If Medicare and FAIR Health pricing is not available, the plan will set the allowed amount to 40% of charges."

60. Medical Provider and now Plaintiff asserts that Administrators on behalf of Defendant misapplied the benefits and paid based on Medicare when it should have made payment based on Fair Health or billed charges.

61. There is no way to determine from looking at the plan document on its face what payment rate is appropriate and so this suit for benefits is appropriate. *See Zack v. McLaren Health Advantage, Inc.*, 340 F. Supp. 3d 648, 665 (E.D. Mich. 2018).

62. Plaintiff asserts that Administrators on behalf of Defendant and or Defendant violated their duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

63. Under either scenario, following the procedure, Medical Provider submitted to Administrators on behalf of Defendant any and all billing information required by Administrators and Defendant.

64. Following the procedure, Medical Provider submitted its claims to Administrators on behalf of Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of Medical Provider's claims were submitted to Administrators on behalf of Defendant using CPT codes, HCPCS and modifiers, as necessary. Medical Provider submitted to Administrators on behalf of Defendant any and all billing information and any and all additional information requested by Administrators on behalf of Defendant.

65. DEFENDANTS processed Medical Provider's bill of $331,626.00 and sent a total payment amount of $6,123.00 far below 40% of the billed amount, the 80th percentile of Fair Health or the UCR rate.

66. As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and now Plaintiff is entitled to that payment from DEFENDANT.

## FIRST CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

67. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

68. Administrators on behalf of DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

69. Administrators on behalf of DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

70. Administrators on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

71. Medical Provider then relied on Administrators on behalf of DEFENDANT's misrepresentation and provided the services to Patients. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

72. Medical Provider was owed and now Plaintiff is owed an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

73. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

74. Administrators on behalf of DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable

and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

75. Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

76. After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

77. Medical Provider did rely on the statements, assertions and promises of Administrators on behalf of DEFENDANT and provided the medical services to the Patient.

78. As a direct and proximate result of Administrators on behalf of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

79. The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patient. As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

80. In light of the material representations and misrepresentations of Administrators on behalf DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying

payment and indemnification for Patient's treatment at the reasonable and customary and or market rate.

81. Medical Provider was owed and now Plaintiff is owed an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

82. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

83. This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

84. Medical Provider did and now Plaintiff does seek to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider and now Plaintiff have standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider and now Plaintiff are a "beneficiary" entitled to collect benefits, and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

85. DEFENDANT is the payor of benefits

86. By reason of the foregoing, Medical Provider was and now Plaintiff is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action.

///

///

///

## PRAYER FOR RELIEF

**WHEREFORE,** Healthcare Ally Management of California, LLC prays for judgment against defendants as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patient; and

4. For such other relief as the Court deems just and appropriate.

Dated: September 12, 2022         LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
    JONATHAN A. STIEGLITZ
    Healthcare Ally Management of California, LLC

## DEMAND FOR JURY TRIAL

Plaintiff, Healthcare Ally Management of California, LLC, hereby demands a jury trial as provided by law.

Dated: September 12, 2022         LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
    JONATHAN A. STIEGLITZ
    Attorneys for Plaintiff,
    Healthcare Ally Management of California, LLC